UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21555-CIV-UNGARO/SIMONTON

MATT ALOISIO,

    Plaintiff,

v.

ST. TROPEZ II, LLC., J. MILTON
& ASSOCIATES, INC., YOSI GIL
and MARIA ROSALES,

    Defendants.
_____/

ORDER GRANTING, IN PART, PLAINTIFF'S
MOTION TO COMPEL DISCOVERY

    Presently pending before the Court is Plaintiff's Motion to Compel Discovery against Defendant St. Tropez, II, LLC. [D.E. 18], which is referred to the undersigned Magistrate Judge [D.E. 19]. The Defendant filed a Response to the Motion [D.E. 20] and Plaintiff filed a Reply [D.E. 21]. On December 2, 2008, the undersigned held a hearing on the Motion. This Order incorporates findings made at that hearing, as well as conclusions and findings based upon the Parties' submissions and the Defendant's post-hearing submission. Based thereon and for the reasons stated below, Plaintiff's Motion to Compel is granted, in part.

I.    <u>Background</u>

    Plaintiff Matt Aloisio ("Aloisio") initiated this action against the Defendants seeking, among other things, to rescind a Purchase Agreement and recover deposit monies and damages related to the purchase of a condominium unit. According to the Amended Complaint, in August 2005 Plaintiff entered into a Purchase Agreement for a condominium unit wherein Plaintiff paid $140,600.00 in preconstruction deposits to

Defendant St. Tropez, II, LLC. ("St. Tropez").  Plaintiff alleges that pursuant to the Purchase Agreement, the condominium was to be substantially completed by March 31, 2008, and according to the Property Report, a temporary certificate of occupancy would be obtained for the unit no later than June 2008.  It is undisputed that the condominium was not completed by the Purchase Agreement date, nor was the temporary certificate of occupancy obtained by the date stated in the Property Report.[1]  In its Amended Complaint, Plaintiff alleged Breach of Contract against Defendant St. Tropez, II, LLC (Count I), Violation of Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1703(a)(2), ("ILSA") against all Defendants (Count II), Publication of False and Misleading Information Under § 718.506(b) Florida Statutes against Defendants J. Milton and St. Tropez II (Count III), and Aiding and Abetting Fraud against Defendant Rosales (Count IV) [D.E. 9].

   Defendant St. Tropez filed a Motion to Dismiss the Plaintiff's Amended Complaint which the Honorable District Court Judge Ursula Ungaro granted, in part, and denied, in part [D.E. 16].  In so doing, the District Court found, *inter alia*, that Plaintiff properly stated a claim for breach of contract in Count 1 against Defendant St. Tropez for its alleged failure to obtain a temporary certificate of occupancy by June 2008, and for a violation of ILSA in Count 2 for the Defendants' alleged misrepresentation in the Property Report regarding when the temporary certificate of occupancy would be obtained  [D.E. 16 at 3, 6].   The Court dismissed Counts III and IV and directed the Defendants to file an Answer to the Amended Complaint [D.E. 16].  In their Answer, Defendants raised the following relevant Affirmative Defenses:

---

[1] In fact, the condominium unit is still not completed as of this date.

   5. Any alleged requirement that the subject condominium was required to be complete by a specific date is subject to exceptions relating to reasonable and/or unavoidable construction delays.

   6. Any construction delay beyond the date on which Plaintiff alleges that the subject condominium was required to have been complete was/is due to reasonable causes beyond the control of any Defendant. Accordingly, any such delay beyond the alleged required completion date cannot serve as the basis for Plaintiff's claims herein.

[D.E.17 at 6-7].

 On August 16, 2008, Plaintiff propounded its First Request for Production to Defendant St. Tropez [D.E. 18-2]. Defendant St. Tropez served its Response to Plaintiff's First Request for Production on September 29, 2008, and therein raised several objections primarily related to the relevance and burdensome nature of the Requests [D.E. 18-3]. Plaintiff has now filed the instant Motion to Compel Defendant St. Tropez to produce certain documents that Plaintiff sought in its Requests [D.E. 18]. Specifically, Plaintiff seeks to compel Defendant St. Tropez to produce documents responsive to Request Nos. 12, 21, 22 and 23.

 After reviewing the Parties' submissions, the undersigned concluded that the Parties' filings on the Motion failed to provide sufficient facts and legal support to resolve the Motion to Compel. Therefore, the undersigned held a hearing on the Motion in an effort to obtain clarification on the Parties' positions regarding discovery, to determine the manner in which the documents at issue were maintained, and in an attempt to resolve the issue in order that discovery could proceed in an expeditious fashion.

 At the hearing, the Parties raised new legal issues and arguments that had not been briefed in their submissions and also failed to provide specific facts to support their respective positions. Accordingly, at the Court's direction, after the hearing, the

Defendant filed a supplemental report in support of its position which detailed the delays in construction which Defendant contends were due to reasonable causes beyond its control [D.E. 34].  The undersigned has now considered all of the materials submitted by the Parties and the arguments raised in the hearing and finds as follows.

II.     Analysis

   A.     Request for Production 12

In Request for Production 12, Plaintiff requested, "All documents and communications concerning representations made by the Defendant to any buyer concerning the expected length of time for completing the construction of the Condominium."[D.E. 18 at 2].  Defendant St. Tropez raised several objections to this Request, and asserted that the Request was immaterial as the only claim pending against St. Tropez was whether it improperly violated the Purchase Agreement and Property Report by failing to complete construction of the condominium by June 2008.  *Id.*

In its Motion to Compel, Plaintiff contends that this Request is directly relevant to Count II of the Amended Complaint which alleges that St. Tropez intentionally misrepresented that a temporary certificate of occupancy would be obtained for the condominium unit no later than June 2008.  In response, Defendant argues that this Request encompasses documentation and communications pertaining to other purchasers whose contracts have nothing to do with this case and thus are irrelevant [D.E. 20 at 5].

 The Defendant's analysis is incorrect.  More specifically, the District Court's Order on the Defendants' Motion to Dismiss clearly found that the Plaintiff properly stated a claim for the alleged misrepresentation in the Property Report regarding the

4

date that the temporary certificate of occupancy would issue [D.E. 16 at 6].   The Property Report stated, "A special warranty deed conveying fee simple title will be delivered after construction of your Unit is substantially completed, as evidenced by the issuance by the applicable governmental authority of a temporary certificate of occupancy therefor [sic] at the closing of the transaction and no later than June, 2008".  [D.E. 9-5 at 7].   Further, as Plaintiff points out in its Reply, Defendants have denied that they made false representations in this matter. Thus, the fact that Defendants may have made conflicting or varying representations to other prospective buyers regarding the anticipated date that the temporary certificate of occupancy would be obtained or the condominium would be completed may be relevant to establish that the statements made in the Property Report were, in fact, false statements at the time they were made.  *See, e.g.*, 15 U.S.C.A. § 1703 (setting forth prohibited activities, including making untrue statements in record or in property report in sale or lease of certain properties).  Therefore, Plaintiff is entitled to discover documents related to representations made to other purchasers regarding when the temporary certificate of occupancy would be obtained and when the condominium would be completed.

At the hearing, Defendant's Counsel raised for the first time, an additional argument that the requested documents were irrelevant as Defendant's intent is not an element of the ILSA misrepresentation claim.  Plaintiff countered that to state a claim under ILSA he was required to prove that Defendant made the misrepresentation as to the date when the temporary certificate of occupancy would be obtained either knowing at the time it was false or with reckless disregard for the truth.  Neither side briefed this issue which was raised for the first time at the hearing, although Plaintiff argued in its Reply, that it should be entitled to discover evidence bearing on whether the

misrepresentation was in fact knowingly made [D.E. 21 at 5]. The case law seemingly supports Plaintiff's contention that Plaintiff will have to meet the burden of proof that it claims to have, to the extent that Plaintiff will likely have to show that the statement was false when it was made. *See e.g.*, *Solomon v. Pendaries Prop.*, 623 F.2d 602, 604 (10th Cir. 1980) (stating the relevant section of Land Sales Act did not confer cause of action for representation of future occurrences that the developer in good faith intended, at the time of sale, to carry out). *Accord*, *Prebil v. Pinehurst, Inc.*, 638 F. Supp. 1314, 1318 (D. Mon. 1986)(determining that statement of material fact must be untrue when made at the time of sale to give rise to violation under the land sales act); <u>See also</u> *Price Gibbes v. Rose Hill Plantation Development, Co.*, 794 F. Supp. 1327 (D. South Car. 1992)(stating in order to prevail on ILSA claim a plaintiff does not need to prove that defendant intended to defraud or deceive but only need to show that misrepresentation of material fact existed in the report at the time the property was sold). Thus, the undersigned finds that the Plaintiff is entitled to the documents that it seeks in this regard.

At the hearing, Defendant also argued that it would be unduly burdensome to require it to provide every communication to every prospective buyer, particularly considering Defendant's representation that in 2005 people were "lining up to buy units" and given the fact that the condominium project is a three tower complex. In addition, according to the Amended Complaint, the Plaintiff did not begin gathering information on the condominium until July of 2005 and entered into the Purchase Agreement on August 10, 2005 [D.E. 9-5]. Also, the Property Report for the condominium that Plaintiff alleges contains misrepresentations is dated May 20, 2005. *Id*. Thus, the most relevant statements would be those made to potential buyers in this time frame. Therefore, at the present time, the scope of the request will be limited as follows. Defendant shall

produce one copy of all versions of the Property Report given to prospective buyers. In addition, limited to the time period between May 2005 and September 2005, Defendant shall produce all copies of communications to prospective buyers, other than the property report, regarding the anticipated date that the temporary certificate of occupancy would be obtained or the condominium completed.[2]

B.    Request or Production Nos. 21, 22, 23

In Request for Production Nos. 21, 22 and 23, Plaintiff sought the following:

> 21.    All progress reports and work logs concerning the Condominium.
>
> 22.    All correspondence between Defendant and any general contractor or subcontractor employed with respect to the Condominium referring or relating to the progress of construction.
>
> 23.    All requests for change orders submitted by any general contractor or subcontractor to Defendant with respect to the Condominium.

[D.E. 18 at 3].    Defendant St. Tropez objected to these Requests as being overly broad, burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of relevant or admissible evidence [D.E. 18-3]. In addition, Defendant asserted that the requested documents have no bearing on Plaintiff's claims as the case against Defendant St. Tropez is not a construction case rather is only a case about whether the Defendants violated the Purchase Agreement or the Property Report. *Id.*

---

[2] At the hearing, Plaintiff also requested that the Defendant produce documents regarding recent representations to buyers about when the condominium project is now anticipated to be completed. Plaintiff asserts that such documents are relevant to calculate how untimely the completion of the condominium will be. However, Plaintiff failed to provide any legal support for its position and has, thus far, failed to demonstrate how recent representations to potential buyers would alter any finding regarding whether Defendant made false statements or misrepresentations in the Property Report, at issue for purposes of establishing an ILSA violation or a breach of contract claim.

In its Motion to Compel, Plaintiff asserts that the documents requested are critical to determine the reasons for the construction delays and to discover witnesses who may have information regarding the basis for the delays. *Id.* at 4. In its Response, Defendant countered that it has already agreed to produce relevant documentation including, all documents related to events that constituted "force majeure" with respect to the construction of the condominium, that related to any acts of God or events beyond the control of Defendant that Defendant claims caused the delays, and all correspondence between Defendant and any general or subcontractor relating to the architectural plans which served as the basis for requiring more time to construct the condominium [D.E. 20 at 4]. Defendant argues that it should not be required to produce the voluminous documents requested by Plaintiff as its offered production "...completely and totally encompass documents needed in relation to construction delays beyond the controls of any Defendant." *Id*. In its Reply, Plaintiff argues that the documents should not be limited as the Requests are narrowly tailored and go to the core of this dispute of this litigation, the delayed completion of the condominium.

The undersigned agrees with the Plaintiff, particularly in light of the affirmative defenses raised by the Defendants as set forth above. The Defendants have raised the issue that reasonable and unavoidable occurrences may have caused the delay of the completion of the condominium and for obtaining the temporary certificate of occupancy. However, there may be other reasons for the delay that a fact finder could determine were unreasonable and avoidable, which may be relevant to Plaintiff's case. In addition, as argued by Plaintiff's Counsel, the events which Defendant claims to have caused the unavoidable delay may not have been the true cause of the actual delay. Thus, Defendant's offer to produce documents that *it* believes constitute reasons for the

delay and/or are caused by changes to the architectural plans will not provide the Plaintiff with information regarding other sources of the delay, that were not beyond Defendant's control or the result of "force majeure".

As to the temporal scope of Plaintiff's request, at the hearing the Defendant argued that any documents related to the delay of the completion of the condominium after Plaintiff filed its law suit in June of 2008 were irrelevant to either the breach of contract claim or the violation of ILSA claim. Without reaching the issue of whether documents generated after June 2008 were relevant to Plaintiff's claims, the undersigned inquired about the possibility of limiting the temporal scope of Plaintiff's request, but the Defendant was unable to identify the specific delays or the exact date of those delays that Defendant was relying upon to support its affirmative defenses. Thus, the undersigned directed the Defendant to submit additional materials which detailed the delays that Defendant alleged were beyond its control. In compliance with this Court's directive, after the hearing, the Defendant filed a "Force Majeure Report" which reveals that the delays were intermittent and overlapping from January 2006 through April 2008 [D.E. 34]. Therefore, the undersigned concludes that there is no way to reasonably limit the temporal scope of the requested discovery.[3]

---

[3] Again, the Court notes that the Plaintiff has also requested that the Defendant produce documents regarding delays to the condominium project through the present time. Plaintiff asserts that such documents are relevant to its breach of contract claim, as notwithstanding any unavoidable and reasonable construction delays, the Defendant still has failed to perform under the contract. In this sense, Plaintiff seemingly is raising a quasi-tolling argument that may provide for a breach to occur after the Defendant's excused delays expire, if the Defendant still has not performed under the contract. Neither Party however, provided any legal support for its position. Nevertheless, given that Plaintiff's request including the request for recent delays to the construction project are reasonably related to its claims, the undersigned will not limit the request to the June 2008 date, when the breach of contract action was filed.

Moreover, the Defendant has not demonstrated that the production of documents responsive to Plaintiff's request would be unduly burdensome.  Defendant's Counsel failed to provide any estimates related to the costs or the number of hours required to review the files and to produce the requested documents.  Rather, Defendant's counsel only asserted that files were kept for each subcontractor, that there were approximately 25 subcontractors, and that each page of each file would need to be reviewed for privileged information as well as to eliminate non-responsive documents.[4]  Plaintiff's Counsel has offered a reasonable alternative under which he would review the relevant files, tag the documents to be copied and would supply the vendor to perform the copying.  Defense Counsel's argument that the subcontractors' files may contain privileged communications from counsel that are too burdensome to remove is unconvincing.  If any privileged documents are contained in the subcontractor files and intermixed with general documents which are reviewed by Plaintiff's counsel, the privilege will not be deemed waived by the inadvertent production.

Finally, it bears noting that the undersigned endeavored, with little success, at the hearing, to alleviate any possible burdensomeness of the Plaintiff's request but neither Party has been able to devise a method to do so.  While the undersigned is cognizant of the propriety of ensuring that the costs of discovery do not surpass the cost of the Plaintiff's claims, it appears that Plaintiff's counsel has insisted on everything and Defendant's counsel was so certain that the requests were unfounded that he did not have sufficient knowledge of the files and the scope of the project to make workable

---

[4] Counsel for the Defendant estimated that there were twenty-five subcontractors, based upon his experience on this type of project,  but he was unable to provide a number certain as he had not reviewed the relevant files in this matter.

suggestions. Plaintiff has mitigated the burdensomeness on Defendant by offering to inspect and tag the relevant documents from the construction files, and pay for a vendor to copy them. Accordingly, the undersigned concludes that, as there is no way at this point to reasonably limit the Plaintiff's requests without hampering Plaintiff's ability to respond to Defendant's affirmative defenses, Plaintiff is entitled to obtain documents related to the progress of the construction of the condominium, including work logs and reports.

Therefore, for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel is **GRANTED, in part** [D.E. 18]. On or before Monday, December 15, 2008 Defendant St. Tropez shall respond to the Plaintiff's First Request for Production Nos. 12 , 21, 22, 23 by providing the following documents:

12. One copy of all versions of the Property Report given to prospective buyers; and, all copies of communications to prospective buyers, other than the property report, regarding the anticipated date that the temporary certificate of occupancy would be obtained or the condominium completed for the time period of May 2005 through September of 2005;

21. All progress reports and work logs concerning the construction of the Condominium. Defendant may fulfill this request by producing the progress reports and work logs maintained in the general contractor's files;

22. All correspondence between Defendant and any general contractor or subcontractor employed with respect to the Condominium referring or relating to the progress of construction;

23. All requests for change orders submitted by any general contractor or subcontractor to Defendant with respect to the Condominium. Defendant may fulfill this request by producing the change order contained in the general contractor's files.

**DONE AND ORDERED** in Chambers in Miami, Florida, on December 5th, 2008.

*Andrea M. Simonton*
_____
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Ursula Ungaro, United States District Judge
All counsel of record